

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

UNITED STATES OF AMERICA )
)
)
v.                                                )     Criminal Action No.: 3:10CR170-6–HEH
)     Civil Action No.: 3:13CV526–HEH
MARK JASON FIEL,                      )
)
Petitioner.                           )

## MEMORANDUM OPINION
### (Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255)

By Memorandum Opinion and accompanying Order issued on August 1, 2014

(ECF Nos. 1087, 1088), this Court dismissed all but one claim of Petitioner's Motion to

Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion").[1]

The remaining claim focuses on the adequacy of trial counsel's representation during the

course of plea negotiations.  Because several pivotal facts material to the resolution of

this claim are in dispute, this Court was unable to find conclusively at the pleading stage

that Petitioner was entitled to no relief.  *See* 28 U.S.C. § 2255(b).  Accordingly, this

Court conducted an evidentiary hearing on January 20, 2015, limited to whether

Petitioner was competently counseled concerning his potential sentencing exposure under

the U.S. Sentencing Guidelines if convicted by a jury.

As more fully explained in this Court's previous Memorandum Opinion, the

Petitioner, Mark Jason Fiel ("Petitioner"), who is presently a federal inmate, was

convicted by a jury of this Court of Conspiracy to Violate the Racketeer Influenced and

---

[1] Petitioner's original § 2255 motion was filed *pro se*.  Petitioner is now represented by counsel.

Corrupt Organizations Act ("RICO"), in violation of 18 U.S.C. §§ 1961–1968; and

Conspiracy to Commit Violence in Aid of Racketeering, in violation of 18 U.S.C.

§ 1959(a)(3). Petitioner was sentenced to 114 months of imprisonment on Count One,

and 36 months on Count Two, to be served concurrently. Petitioner's convictions were

affirmed by the United States Court of Appeals for the Fourth Circuit on August 2, 2012.

*Werth v. United States*, 493 F. App'x 361, 364 (4th Cir. 2012).

Succinctly, in Petitioner's remaining claim he contends that "[i]n light of the

recent Supreme Court rulings in *Lafler* and *Frye* [, ] counsel fail[ed] to properly advise

Movant regarding possible plea." (Pet'r's § 2255 Mot. 5, ECF No. 1029.) This claim is

premised on his perception that his counsel failed to effectively negotiate a plea

agreement with the United States, specifically by misjudging the chances of acquittal,

miscalculating his sentencing guidelines, and inaccurately assessing his possible

sentencing exposure if convicted.

According to Petitioner, in the weeks preceding trial his counsel expressed

confidence in a favorable outcome. He maintains that she expressed little interest in

pursuing a plea agreement, advising that even if convicted he was facing an offense level

of 19, and about 36 months of confinement. (Pet'r's Aff. at 2, ECF No. 1029-1.) At

some point, the United States "offered a plea agreement of 21–27 months if I pled to

Count I and II." (*Id.*) The United States also stipulated in the proposed plea agreement

that Petitioner "played no aggravating or mitigating role in the offense." (Gov't's Resp.

to Court Order, Ex. 1 at 4, ECF No. 1107-1.) Petitioner alleges that he responded by

suggesting that certain language pertaining to the Outlaws Motorcycle Club be removed

2

from the agreement.  Ultimately, the modifications he requested were not made by the

United States and, according to Petitioner, on advice of counsel, he turned down the plea

agreement.  (Pet'r's Aff. at 2–3.)  In her affidavit, Petitioner's retained trial counsel,

Angela D. Whitley ("Whitley"), recalls the events differently.  Whitley denies having

assessed Petitioner's exposure if convicted at only 36 months.  She disclosed to him that

the minimum sentence he could receive at a base offense level of 19 would be 36 months,

but that depending on the evidence introduced at trial and other possible sentencing

enhancements under the guidelines, his sentence could be as high as the statutory

maximum of 20 years.  (Gov't's Resp. to § 2255 Mot., Ex. 1 ¶ 2 ("Whitley Aff."), ECF

No. 1081-1.)  Furthermore, according to Whitley's affidavit, Petitioner elected to wait

until the jury trying the first group of Outlaws returned a verdict before deciding on

whether to plead guilty.[2]  The government declined to defer Petitioner's entry of a guilty

plea until after the jury returned a verdict.  The plea offer was therefore withdrawn.  (*Id.*

¶ 3.)  To resolve the discrepant versions, this Court conducted an evidentiary hearing.

In *Missouri v. Frye*, the United States Supreme Court reiterated that the Sixth

Amendment right to effective assistance of counsel applies to all critical stages of

criminal proceedings, including the consideration of plea offers that lapse or are rejected.

132 S. Ct. 1399, 1402 (2012).  The court in *Frye* also emphasized that the two-part test

articulated in *Strickland v. Washington*, 466 U.S. 668 (1984) governs ineffective

assistance claims in the plea bargain context.  *See Frye*, 132 S. Ct. at 1405; *Hill v.*

---

[2] Twenty-seven members of the Outlaws Motorcycle Club were indicted in this case.  Security
and space limitations precluded a single trial.  Therefore, the defendants were divided into two
groups for trial.  Petitioner was in the second trial group.

*Lockhart*, 474 U.S. 52, 60 (1985).  The negotiation and acceptance of a plea offer is a

critical stage of the proceedings during which the right to counsel adheres. *Lafler v.*

*Cooper*, 132 S. Ct. 1376, 1392 (2012).

To prevail on a petition alleging ineffective assistance of counsel under 28 U.S.C.

§ 2255, a petitioner must first show that counsel's representation was deficient, and

second, that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at

687.  To satisfy the deficient prong of *Strickland*, the defendant must overcome the

"strong presumption" that counsel's strategy and tactics fall "within the wide range of

reasonable professional assistance." *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir.

2001) (quoting *Strickland*, 466 U.S. at 689).[3]  As to prejudice, a defendant must show

that there is a reasonable probability that "but for counsel's unprofessional errors, the

result of the proceeding would have been different.  A reasonable probability is a

probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at

694.  "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*,

559 U.S. 356, 371 (2010).

In analyzing ineffective assistance of counsel claims, the Court need not determine

whether counsel performed deficiently if the claim is readily dismissed for lack of

prejudice. *Strickland*, 466 U.S. at 697.  To prove an actionable claim, Petitioner must

---

[3] As Justice Kennedy noted in writing for the Court in *Premo v. Moore*, "[t]he question is
whether an attorney's representation amounted to incompetence under prevailing professional
norms, not whether it deviated from best practices or most common custom."  562 U.S. 115, 659
(2011) (internal quotation marks and citations omitted).

demonstrate a "reasonable probability of a different outcome." *Lenz v. Washington*, 444

F.3d 295, 303 (4th Cir. 2006) (internal citations and quotation marks omitted).

In the context of plea negotiations, the Supreme Court in *Frye* articulated the

standard to be used by trial courts in evaluating claims of ineffective assistance of

counsel:

> To show prejudice from ineffective assistance of counsel where a plea offer
> has lapsed or been rejected because of counsel's deficient performance,
> defendants must demonstrate a reasonable probability they would have
> accepted the earlier plea offer had they been afforded effective assistance of
> counsel. Defendants must also demonstrate a reasonable probability the
> plea would have been entered without the prosecution canceling it or the
> court refusing to accept it . . . .

132 S. Ct. at 1409. Given the nuanced art of plea negotiations, reviewing courts have

been reluctant to define detailed standards for the proper discharge of defense counsel's

participation in the process. *Premo*, 562 U.S. at 661. Moreover, the Court in *Premo*

cautioned reviewing courts to be mindful of the "potential for the distortions and

imbalance that can inhere in a hindsight perspective." *Id.* A defendant in a criminal case,

however, has "no constitutional right to plea bargain; the prosecutor need not do so if he

prefers to go to trial." *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977).

Petitioner's first witness at the evidentiary hearing was Assistant United States

Attorney Peter S. Duffey ("Duffey"). (Evidentiary Hr'g Tr. at 6, ECF No. 1129.) Duffey

was one of several prosecutors assigned to the Outlaws case. (*Id.* at 7.) He testified that

he had minimal personal contact with Petitioner's attorney concerning plea negotiations.

(*Id.* at 7–8.) He was, however, aware of the course of discussions, the terms of the plea

offer, and the disputed elements of the statement of facts. (*Id.* at 7–12.) Duffey testified

5

that there were several iterations of the statement of facts. (*Id.* at 11.) Petitioner took

umbrage with the prosecution's characterization of the Outlaws as a criminal

organization and the portrayal of his involvement in drug distribution. (*Id.* at 18–19.)

The prosecution deleted the reference to Petitioner's drug distribution but retained the

description of the Outlaws Motorcycle Club as a criminal organization.[4] (*Id.*) There

were no conversations with Duffey concerning Petitioner's sentencing exposure if

convicted at trial. (*Id.* at 21.)

Duffey further testified that he was present in court on November 1, 2010, the date

appointed for Petitioner's plea of guilty. (*Id.* at 20.) Prior to the opening of court,

Petitioner's counsel, Whitley, informed him that her client would not plead guilty until a

verdict was returned on the first group of Outlaws on trial at that time. (*Id.* at 22, 45–46.)

Duffey declined to postpone the plea until the deliberating jury reached a verdict. (*Id.* at

46.) The plea offer was withdrawn and the parties had no further negotiations. (*Id.* at

20–21, 23.)

Whitley, who had practiced law for twenty years, was called as Petitioner's second

witness.[5] (*Id.* at 25, 37.) She described her negotiations with Assistant U.S. Attorney

Dennis Fitzpatrick ("Fitzpatrick") which culminated in a formal plea offer. (*Id.* at 25–

30.) Due to a "computer crash" resulting in a loss of pertinent email traffic, Whitley was

unable to reconstruct some aspects of the negotiation process, but recalled meeting with

---

[4] The government considered the characterization of the Outlaws to be an essential element of a violation of 18 U.S.C. §1961, *et seq.*

[5] Whitley acknowledged receiving a public reprimand from the Virginia State Bar. Although counsel for Petitioner attempts to impugn Whitley's reputation as a trial attorney (Pet'r's Brief in Support § 2255 Motion 7–8, ECF No. 1133), it is important to note that she served as retained counsel in this case. (Evidentiary Hr'g Tr. at 33–34.)

the Petitioner to discuss the plea agreement and associated statement of facts. (*Id.* at 28.)
At this meeting, Petitioner expressed a desire to plead guilty, but wanted all references to
the Outlaws as a criminal organization removed, along with the allegation that he had
distributed cocaine. (*Id.* at 42–43.)

Whitley also testified that around the time they initially discussed the plea offer,
she explained to the Petitioner his potential sentencing exposure. (*Id.* at 30, 36.) The
plea agreement, as offered, contained a non-binding sentencing recommendation of 21–
27 months under Rule 11(c)(1)(B). (*Id.* at 48–49.) She advised Petitioner that if
convicted at trial, his total offense level would be at least 19 under the U.S. Sentencing
Guidelines. (*Id.* at 49–51.) She did not provide a detailed explanation of the potential
sentencing enhancements based on possible proof of his role in the charged offenses. (*Id.*
at 30–31, 51.) However, she testified that she made clear to her client that if the
government proved that the RICO conspiracy involved drug distribution or robbery, the
penalty could be higher. (*Id.*) Whitley further informed Petitioner that his sentence could
go higher or lower depending on his specific role in the case. (*Id.* at 51.) She also
indicated that he would risk losing a three-level reduction for acceptance of responsibility
and could face a maximum sentence of twenty years. (*Id.* at 31, 52.) Whitley adamantly
denied promising the Petitioner any specific sentence or assuring him of an acquittal. (*Id.*
at 49, 52.) She did vaguely recall telling the Petitioner that he was probably risking no
more than nine additional months of confinement by going to trial, but denied advising
him that he only faced 36 months if convicted on the RICO count. (*Id.* at 52–53.)

On cross examination, Whitley recounted the events of November 1, 2010. She recalled that her discussion with Duffey occurred during the trial of the first group of Outlaw defendants. (*Id.* at 44.) She testified that her client was displeased by the government's refusal to delete the description of the Outlaws as a criminal organization. (*Id.* at 47–48.) She informed Duffey that Petitioner would not accept the agreement as offered. (*Id.* at 48–49.) Duffey declined to extend the time for acceptance of the plea and indicated that the offer was withdrawn. (*Id.* at 23.)

The final witness was the Petitioner, Mark Jason Fiel,[6] who stated unequivocally that plea discussions were his idea. (*Id.* at 60, 63.) He first broached that subject with Whitley around October 25, 2011, and received the plea agreement and statement of facts a day or two later for review. (*Id.* at 60–62.) Petitioner testified that he expressed a desire to accept the plea, but wanted several changes made by the government. (*Id.* at 65–67.) Petitioner had no recollection of Whitley discussing the mechanics of the sentencing guidelines or sentencing table with him. (*Id.* at 69, 71.) She also never explained enhancements or potential departures, despite his questions. (*Id.* at 72.) According to Petitioner, Whitley told him he "was only looking at about 36 months if [he] went to trial." (*Id.* at 69.)

Petitioner received an amended copy of the statement of facts on November 1, 2010, prior to the time set for entry of his plea. (*Id.* at 72–74.) He recalled Whitley

---

[6] The Petitioner also called as a witness his brother, Jeremiah Fiel, who actually retained Whitley. Jeremiah Fiel had no direct knowledge of the plea negotiations, but testified that Whitley was "pretty confident she could win," and that she had advised him that going to trial was a calculated risk. (*Id.* at 57.)

informing him that the jury was still deliberating on the charges against his fellow

Outlaws. (*Id.* at 72.) Petitioner denied telling her that he wanted to delay his plea until

the verdict was returned. (*Id.* at 73.) Petitioner testified that he was unconcerned about

the verdict and reasoned that he would be tried by a different jury. (*Id.* at 72–73.) After

again reviewing the final rendition of the statement of facts, Petitioner was annoyed that

it still referred to the Outlaws as a criminal organization. (*Id.*) Petitioner described this

modification as an important change. (*Id.* at 84.) When he expressed his displeasure,

Petitioner contends that Duffey told him to either "take it or leave it." (*Id.* at 74, 85.)

According to Petitioner, he was "confused" at that point. (*Id.*) Although he admits that

Whitley never advised him to reject the offer, he described her demeanor as suggesting

that he should do so. (*Id.* at 74.) He recalls Whitley reiterating that "[y]ou're only

looking at nine more months." (*Id.*) It was also his impression that he was only facing

about 36 months if he went to trial. (*Id.* at 89.) Petitioner conceded, however, that the

failure to amend the statement of facts was one of the primary reasons he elected not to

proceed with the plea. (*Id.* at 86.) "The main reason was that that wasn't changed." (*Id.*

at 96.)

Petitioner clarified on cross examination that Whitley's forecast of 36 months was

an estimated range and not a guarantee. (*Id.* at 78–79, 96.) He further explained that the

removal of the criminal organization language was important because he did not want to

"involve anybody else" in illegal activity. (*Id.* at 85.) He also revealed that he was

frustrated because the government refused to reword the statement of facts. (*Id.*)

Petitioner testified that he "thought [he] had a decent shot at being acquitted" and had no

concern about the effect of a felony conviction on future employment opportunities. (*Id.* at 87, 100.) He also acknowledged his awareness that proof of his role in the offense and acts constituting attempted murder could have elevated his punishment up to the statutory maximum. (*Id.* at 91.) In addition, Petitioner indicated that he had read the provisions of the plea agreement pertaining to the statutory penalty range and had no questions for Whitley.[7] (*Id.* at 98.)

Petitioner concluded by steadfastly declaring that he was willing to accept the plea agreement, even with the pejorative reference to the Outlaws, if he had known that he was facing a sentencing guideline range of 78–97 months. (*Id.* at 75, 103.) He concluded that "it was a gamble not to accept the plea agreement." (*Id.* at 95.) However, Petitioner made no effort to rekindle plea discussions and never complained to Whitley that his sentence exceeded 36 months.[8] (*Id.* at 95.) Presumably, on further reflection, this petition followed.

While trial counsel is expected to evidence familiarity with the U.S. Sentencing Guidelines, no attorney can forecast the outcome of a sentencing proceeding with certainty. This is particularly true when the total offense level is dependent on findings of contested facts, coupled with other discretionary factors. Count One of the Indictment in this case presented such a situation where the RICO conspiracy embraced a host of methods and means, each enabling potential guideline enhancements, hinging ultimately

---

[7] Petitioner revealed during cross examination that he had read the language in the plea agreement that the court could impose any sentence within the statutory maximum and that any estimate of the sentencing range by his counsel is a "prediction and not a promise." (*Id.* at 93.)
[8] In an email dated November 22, 2011, approximately six months after Petitioner was sentenced, he lauded Whitley for her diligent representation in his case. (Whitley 2d Aff., Ex. 1, ECF No. 1120-1.)

on the strength on the government's case.  Even the most prescient counsel can only offer

an informed prediction.  The Fourth Circuit has been generally unsympathetic toward

ineffective assistance of counsel claims based on inaccurate sentence predictions.  *See*

*United States v. Foster*, 68 F.3d 86, 87–88 (4th Cir. 1995).

As the U.S. Supreme Court reiterated in *Burt v. Titlow*, the Sixth Amendment does

not guarantee the right to perfect counsel; it promises only the right to effective

assistance.  134 S. Ct. 10, 18 (2013).  Whitley's predictions may have proven to be

inaccurate, but they were never conveyed as a promise or guarantee.  While she assessed

Petitioner's sentencing exposure to be in the range of 36 months, she clearly informed

him that proof of other offenses as elements of the RICO count, and his role in the

conspiracy, could enhance his punishment.  She also advised him that the offense carried

a statutory maximum of 20 years of confinement.  While Whitley's representation as

retained counsel may have been lackluster, the Court cannot conclude that her advice

regarding sentencing exposure fell below the objective standard of reasonableness

articulated in *Strickland*.

The fatal flaw in Petitioner's quest to set aside his conviction is his own decision

to reject the plea offer.  In his somewhat murky and adumbrative explanation for

rejecting the plea agreement, Petitioner contends that his counsel's demeanor and prior

sentencing predictions were instrumental in the rejection of the plea agreement.

However, the hearing evidence clearly reflected that Petitioner's decision to decline the

plea agreement was the result of the government's refusal to delete the description of the

Outlaws Motorcycle Club as a criminal organization.  The evidence also supported the

11

conclusion that his pique was compounded by the prosecutor's insistence that he either accept the plea or it would be withdrawn.

Despite his insistence that he wanted to accept the agreement, notwithstanding the displeasing characterization of the Outlaws, there is no clear evidence that such desire was ever expressed. In fact, Duffey's admonition on the day of the plea hearing that Petitioner could either take the deal or leave it apparently failed to persuade Petitioner to move forward. Petitioner testified that there were no further discussions because he thought "there was no deal on the table." (Evidentiary Hr'g Tr. at 95.)

Careful application of the governing standard for representation in the plea agreement context would not support the conclusion that counsel's representation was objectively unreasonable. However, even assuming without deciding that Whitley's explanation of the applicable sentencing guidelines was deficient, Petitioner still fails to surmount the high bar set by *Strickland* and *Frye*. Two critical elements necessary to demonstrate prejudice from ineffective assistance of counsel in the plea negotiation context are: (1) a reasonable probability petitioner would have accepted the plea offer had he been afforded effective assistance of counsel, and (2) a reasonable probability that the plea would have been entered without the prosecutor canceling it.[9] *Frye*, 132 S. Ct. at 1403. The record evidence in this case falls short of the mark on both counts.

This Court concludes from the evidence heard, notwithstanding Petitioner's revisionist version, that the decision to reject the plea agreement in this case was inspired

---

[9] Petitioner also fails to demonstrate that the trial court, which elected to depart upward from the guidelines, would have accepted the agreed upon recommendation. *Lafler*, 132 S. Ct. at 1385.

by the government's failure to amend the plea agreement to his satisfaction. Undoubtedly, Petitioner considered the prediction Whitley had offered, but he testified unequivocally that he believed that he had a decent chance of acquittal. This conclusion is further supported by Petitioner's lame explanation for not reopening plea negotiations if he was truly interested in pursuing a plea agreement.

Based on the foregoing analysis, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is denied as to Claim One, and his Petition will be dismissed.

An appeal may not be taken from the final order in a § 2255 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Petitioner has not satisfied this standard. Accordingly, a certificate of appealability will be denied.

13

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: March 3, 2015
Richmond, VA